IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

GERARD J. KEATING, FRANK R.      )
KREJCI, JANE KREJCI, TIMOTHY     )
PETERSON, LINDA PETERSON,        )
DARYL BUTTERFIELD, MAKALA        )
BUTTERFIELD, and JANET A.        )
KEATING, each individually       )
and on behalf of all persons     )
similarly situated,              )
                                 )
            Plaintiffs,          )          7:07CV5011
                                 )
         v.                      )
                                 )
NEBRASKA PUBLIC POWER            )          MEMORANDUM OPINION
DISTRICT, NEBRASKA DEPARTMENT    )
OF NATURAL RESOURCES, DENNIS     )
L. RASMUSSEN, MARY A. HARDING,   )
LARRY A. LINSTROM, DARRELL J.    )
NELSON, EDWARD J. SCHROCK,       )
KEN L. SCHMIEDING, GARY G.       )
THOMPSON, LARRY G. KUNCL,        )
WAYNE E. BOYD, VIRGIL L.         )
FROEHLICH, RONALD W. LARSEN,     )
BRIAN DUNNIGAN, and DOES         )
1-100, each in their official    )
capacities,                      )
                                 )
            Defendants.          )
_____ )


## I.  INTRODUCTION

        This matter is before the Court for ruling on the

cross-motions for summary judgment (Filing Nos. 147, 150 & 153)

the parties[1] filed pursuant to the Court's December 17, 2009,

_____

        [1] Hereinafter, the Court will collectively refer to
plaintiffs Gerard and Janet Keating (the "Keatings"), Frank and
Jane Krejci (the "Krejcis"), Timothy and Linda Peterson (the
"Petersons"), and Daryl and Makala Butterfield (the
"Butterfields") as the "plaintiffs."  The Court will refer to

order (Filing No. 146).  On April 13, 2009, the United States
Court of Appeals for the Eighth Circuit remanded the case to this
Court for further consideration of the plaintiffs' procedural due
process claim (Filing No. 125).  *Keating v. Neb. Pub. Power
Dist.*, 562 F.3d 923, 930 (8th Cir. 2009).  The parties have filed
numerous briefs (Filing Nos. 148, 151, 154,[2] 159, 161, 163, 168,
171, 173 & 175) and evidentiary submissions (Filing Nos. 149,
152, 155, 160, 162, 164, 172, 174 & 176).  On April 23, 2010, the
Court held a hearing in connection with the cross-motions.  Upon
reviewing the motions, briefs, evidentiary submissions, and oral
arguments of the parties, the Court finds the plaintiffs' motion
for summary judgment should be denied, and NPPD's and DNR's
motions for summary judgment should be granted.

---

defendants Nebraska Public Power District, Wayne Boyd, Virgil
Froehlich, Mary Harding, Larry Kuncl, Ronald Larsen, Larry
Linstrom, Darrell Nelson, Dennis Rasmussen, Ken Schmieding,
Edward Schrock, and Gary Thompson as "NPPD."  The Court will
refer to defendants Nebraska Department of Natural Resources and
Brian Dunnigan as "DNR."

[2] The Court deems this brief stricken and replaced with the
plaintiffs' Corrected Memorandum in Support of Plaintiffs' Motion
for Summary Judgment (Filing No. 168).  The plaintiffs' opening
brief did not contain a statement of material facts, because
plaintiffs errantly included their Statement of Specific Facts as
an evidentiary submission in support of their opening brief (*See*
Plaintiffs' Index of Evidence, Filing No. 155, at 8-23).  The
plaintiffs' Corrected Memorandum incorporated the Statement of
Specific Facts into their opening brief's body.  The Court finds
the plaintiffs have sufficiently complied with NECivR 56.1(a)(1).

-2-

## II.   GENERAL PRINCIPLES OF NEBRASKA SURFACE WATER LAW

Although not directly implicated in the plaintiffs'
procedural due process claim, the Court will discuss some general
principles of Nebraska surface water law to aid in understanding
how the parties' appropriation permits relate to each other.
Since 1895, Nebraska has utilized the doctrine of prior
appropriation for the administration of surface water, such as
the confined surface water flowing through the Niobrara River.
*Keating*, 562 F.3d at 925; Richard S. Harnsberger & Norman W.
Thornson, Nebraska Water Law & Administration 10, 70 (1984).
Under the prior appropriation system, DNR is the agency
responsible for administering surface water in Nebraska.  *See
generally* Neb. Rev. Stat. §§ 61-201 to 61-219.

As pertinent to this case, there are two types of
rights recognized by Nebraska's prior appropriation doctrine:
appropriation rights and preference rights.  *In re 2007
Administration of Appropriations of Waters of the Niobrara River*,
278 Neb. 137, 139, 768 N.W.2d 420, 422 [hereinafter *Bond*].  An
appropriation right is a right to divert unappropriated surface
water for a beneficial use.  Neb. Rev. Stat. § 46-204; *Bond*, 278
Neb. at 139, 768 N.W.2d at 423.  Each appropriator's
appropriation right receives a priority date, which is the date
an applicant files an appropriation permit application with DNR.
Neb. Rev. Stat. § 46-205; *Northport Irr. Dist. v. Jess*, 215 Neb.

-3-

152, 158, 337 N.W.2d 733, 738 (1983).  The priority date of a permit is important because it is used to determine which appropriators have priority in times of water scarcity, as the appropriator "first in time is first in right."  Neb. Rev. Stat. § 46-203.  An appropriator with the earlier in time priority date is the "senior appropriator," and the appropriator with the later in time priority date is the "junior appropriator."  *Bond*, 278 Neb. at 139, 768 N.W.2d at 423.  In times of water scarcity, the senior appropriator has the right to continue diverting water against a junior-upstream appropriator.  *See id.*  In effect, junior-upstream appropriators must allow sufficient water to pass their diversion head-gates to fulfill the entire appropriation allotments of senior-downstream appropriators.  In the course of administering surface water, DNR allows water appropriators to issue a "call" for surface water if the flow of surface water at the appropriator's diversion point is insufficient to fulfill the appropriator's permitted diversion rate (Affidavit of Michael Thompson ("Thompson Affidavit"), Filing No. 152-3, ¶ 2).

To illustrate, assume there are two appropriators who are permitted by DNR to divert water from the same stream, one having a priority date of December 31, 2009 (the "2009 appropriator") and one having a priority date of January 1, 2010 (the "2010 appropriator").  Further assume the 2009 appropriator is located downstream from the 2010 appropriator.  If flow levels

-4-

in the stream fall to such a level that the 2009 appropriator is not receiving its full appropriation from the stream, the 2009 appropriator may place a call with DNR requesting the 2010 appropriator cease diverting water until stream levels return to a level sufficient to fulfill the 2009 appropriator's allotment.

Although an appropriator may have superior appropriation rights, a junior appropriator may have a senior preference right over a senior appropriator.  In times of water scarcity, Nebraska law gives superior preference rights to certain uses of surface water regardless of appropriation dates.  *See* Neb. Const. art. XV, § 6; Neb. Rev. Stat. §§ 46-204, 70-668; *Bond*, 278 Neb. at 139, 768 N.W.2d at 423.  For example, appropriators using water for domestic purposes have preference over appropriators using water for any other purpose.  *Id.*  And appropriators using water for agricultural purposes have preference over appropriators using water for manufacturing or power purposes.  *Id.*  Thus, continuing the example, assuming the 2010 appropriator uses water for agricultural purposes and the 2009 appropriator uses water for power purposes, the 2010 appropriator would have a superior preference right to the 2009 appropriator.

Having a superior preference right, however, does not give a junior appropriator unfettered access to water.  "An appropriator having a superior preference right, but a junior

appropriation right, can use the water to the detriment of a senior appropriator having an inferior preference right.  But the junior appropriator must pay just compensation to the senior appropriator." *Bond*, 278 Neb. at 140, 768 N.W.2d at 423.  Again, under the example, even though the 2009 appropriator has a senior appropriation right compared with the 2010 appropriator, the 2010 appropriator may nonetheless exercise its senior preference right if it justly compensates the 2009 appropriator.

In exercising a senior preference right, a junior appropriator may either agree with the senior appropriator on an amount constituting just compensation and enter a subordination agreement or, if no agreement is made, a junior appropriator may commence a condemnation proceeding in a county court to determine the amount of compensation.  Neb. Rev. Stat. § 70-672; *Bond*, 278 Neb. at 140, 768 N.W.2d at 423.  Once the subordination agreement is in place or the condemnation proceeding has resolved, DNR cannot issue closing notices to the junior appropriator for the period of time agreed or contained in the condemnation award. *Bond*, 278 Neb. at 140, 768 N.W.2d at 424.

### III.   BACKGROUND

#### A.   Substantive Facts

As stated *supra*, DNR is the state agency responsible for administering surface water in Nebraska (DNR's Opening Brief ("DNR OB"), Filing No. 151, ¶ 1).  NPPD, a political subdivision

of the State of Nebraska, owns and operates Spencer Dam located on the Niobrara River in northern Nebraska.  NPPD holds three surface water appropriation permits issued to it or a predecessor institution by DNR or a predecessor agency (*See* Plaintiffs' Opening Brief ("POB"), Filing No. 168, ¶ 42).  These three permits are: A-359-R, priority date of September 12, 1896 for 35 cubic feet per second ("c.f.s."); A-1725, priority date of October 30, 1923 for 1450 c.f.s.; and A-3574, priority date of June 8, 1942 for 550 c.f.s. (NPPD's Opening Brief ("NPPD OB"), Filing No. 148, ¶ 1; POB ¶¶ 43 & 45; DNR OB ¶ 8; *see also* Thompson Affidavit, Exhibit H (permit documents)).  These permits allow NPPD to appropriate a total of 2035 c.f.s. for the operation of the Spencer Dam (NPPD OB ¶ 2).[3]

The plaintiffs are farmers and ranchers owning or renting land in the Niobrara Watershed (POB ¶ 1).  The Keatings own 6700 acres in Holt County, Nebraska and hold two surface water appropriation permits: A-14604, priority date of December

---

[3] Although the plaintiffs contest the validity of NPPD's surface water appropriation permits for Spencer Dam, the Court must assume NPPD's permits are valid.  *See In re Water Apropriations D-887 & A-768*, 240 Neb. 337, 344, 482 N.W.2d 11, 17 (1992) (stating the issuance of a surface water permit by a DNR predecessor is a "final and binding adjudication" of an appropriator's rights under the permit).  NPPD's permits must be considered to be valid until they are terminated by DNR, which has "original and exclusive jurisdiction to hear and adjudicate all matters pertaining to water rights for irrigation and other purposes, including jurisdiction to cancel and terminate such rights," *Koch v. Aupperle*, 274 Neb. 52, 60-61, 737 N.W.2d 869, 877 (2007) (citing Neb. Rev. Stat. § 61-206(1)).

22, 1976 for 1.83 c.f.s.; and A-16012, priority date of October 26, 1981 for 1.78 c.f.s.[4] (POB ¶¶ 2, 16; NPPD OB ¶ 4; *see also* Thompson Affidavit, Exhibit B (permit documents)).  The Butterfields rent the Keatings' land for raising crops and livestock (POB ¶ 3).  The Krejcis own 14,539 acres in Holt County and also hold two surface water appropriation permits: A-13320, priority date of December 17, 1974 for 25.8 c.f.s.; and A-17988, priority date of June 18, 2001 for 1.89 c.f.s. (POB ¶¶ 4, 18; NPPD OB ¶ 4; *see also* Thompson Affidavit, Exhibit C (permit documents)).  The Petersons rent the Krejcis' land for raising crops and livestock (POB ¶ 5).  In applying the general principles of Nebraska water law to this case, NPPD is the senior appropriator, and the plaintiffs are junior appropriators, since NPPD's latest priority date is June 8, 1942, and the plaintiffs' earliest priority date is December 17, 1974.[5]

The first surface water appropriation permit certificates DNR issued to the Keatings and the Krejcis state in their text:

---

[4]  These permits note the source of the appropriated water to be "Little Sandy Creek," which is a tributary of the Niobrara River (POB ¶ 17).

[5]  In light of the rules discussed in note 3, *supra,* NPPD's permits must be considered valid and to have senior priority status over the plaintiffs' permits.  *Loup River Public Power Dist. v. N. Loup River Public Power Dist.*, 142 Neb. 141, 153, 155, 5 N.W.2d 240, 248, 249 (1942).

This is to certify that the
foregoing Application Number
[Permit Number] for a permit to
divert water for irrigation has
been examined, and it is hereby
approved subject to the following
limitations and conditions, viz:

    . . .

9th.  That the prior rights of
all persons who, by compliance
with the laws of the State of
Nebraska, have acquired the
right to use the waters of the
natural streams of the state
must not be interfered with by
the use of water under this
permit.

    . . .

11th.  The records show that
there are periods during some
years when the supply of water
in [stream name] is not
sufficient to meet the
requirements of all those
having appropriations for its
use.  The Applicant under this
permit is hereby given notice
that he may be denied the use
of water during times of
scarcity.

12th.  Section 6, Article XV,
Constitution of Nebraska, 1920
and Section 70-668 and 70-669,
Reissue Revised Statutes of
Nebraska, 1943, govern the use
of water, and provide that
waters previously appropriated
for power purposes may be
taken and appropriated for
irrigation purposes, upon due
and fair compensation
therefor; and, inversely they
cannot be appropriated

-9-

                    arbitrarily for irrigation
                    purposes without just
                    compensation.

(Thompson Affidavit, Exhibit B, at 1 (Permit A-14604); *id.*,

Exhibit C, at 1 (Permit A-13320)).  For the later-issued permits,

DNR sent application approval letters to the Keatings and the

Krejcis containing similar language (*See id.*, Exhibit B, at 5-6

(Permit A-16012); *id.*, Exhibit C, at 5-6 (Permit A-17988)).

        On March 2, 2007, NPPD placed a continuing call on the

Niobrara River for Spencer Dam (DNR OB ¶ 17).  Upon an initial

investigation, DNR determined the Niobrara's flow levels were

sufficient to satisfy NPPD's appropriations for Spencer Dam, and

therefore took no action to administer the Niobrara for the

benefit of NPPD's appropriation permits (*Id.*).  On March 27,

2007, DNR performed a field investigation, in which it determined

NPPD could beneficially use the full amount of water it was

entitled to use under its appropriation permits (*Id.* ¶¶ 19-20).

However, during the course of this investigation, DNR determined

Niobrara's flow levels were sufficient to satisfy NPPD's

appropriations, thus obviating the need for administration (*Id.*

¶ 20.)

        Although DNR determined the Niobrara's flow levels were

sufficient as of March 27th to fulfill NPPD's needs, DNR sent

regulating notices to all appropriators upstream of Spencer Dam

notifying them of their specific permit allocations and

                              -10-

prohibiting them from exceeding those allocations (Affidavit of
Brian Dunnigan ("Dunnigan Affidavit"), Filing No. 152-1, ¶ 22 &
Exhibit C).  The Keatings and the Krejcis both received
regulating notices for their appropriation permits (*Id.*, Exhibit
C, at 1-2, 4-5).  The regulating notices did not provide
information regarding the call NPPD had placed (*See id.*).

        In April 2007, the Niobrara's flow levels began to fall
(DNR OB ¶ 23).  In response, DNR sent closing notices on May 1,
2007, to appropriators junior to NPPD who diverted water upstream
of Spencer Dam[6] (*Id.*).  The closing notices stated the
appropriator receiving the notice was prohibited from diverting
water for the benefit of Spencer Dam until further notice was
given (Dunnigan Affidavit, Exhibit D).  The Keatings and the
Krejcis both received closing notices for their appropriation
permits (*Id.*).  After issuing the closing notices, DNR continued
monitoring flow levels on the Niobrara and eventually determined
flow levels were rising to a level sufficient to satisfy NPPD's
allotment (DNR Reply Brief, Filing No. 173, at 19).  Thus, on May
7, 2007, DNR sent opening notices to the junior appropriators who
had received closing notices. (Dunnigan Affidavit, Exhibit E).
On May 10, 2007, DNR issued a letter to the junior appropriators
who had received closing notices discussing why DNR had issued

---

    [6] The parties dispute whether DNR sent Closing Notices to
appropriators upstream of Spencer Dam who would have been senior
to NPPD.  The Court finds this disputed fact to be immaterial.

-11-

the closing notices for NPPD's benefit (Dunnigan Affidavit, Exhibit F).

As Nebraska law recognizes preference rights in addition to priority rights, junior appropriators, such as the plaintiffs, who used water from the Niobrara river for agricultural purposes, had a superior preference right to NPPD, which used water for power purposes.  Thus, due to the water scarcity in 2007 and junior appropriators' senior preference right, NPPD undertook negotiations during the summer of 2007 with many junior appropriators in an effort to enter into subordination agreements with the junior appropriators (*See* Dunnigan Affidavit, Exhibits G & H).  While the negotiations were ongoing, NPPD requested DNR delay administration of the Niobrara through August 1, 2007 (Dunnigan Affidavit, Exhibit H).  During these negotiations, none of the plaintiffs entered into subordination agreements with NPPD nor instituted a condemnation proceeding.

On August 1, 2007, DNR reinstated closing notices against junior appropriators upstream of Spencer Dam (Dunnigan Affidavit, Exhibit I).  The Keatings and the Krejcis again received closing notices (*Id.*).  These closing notices were later lifted between August and October 2007 (Dunnigan Affidavit, Exhibits J & K).  Eventually, the Krejcis entered into a

-12-

subordination agreement with NPPD, but the Keatings did not (DNR OB ¶¶ 32 & 33).

**B.   Procedural History**

The plaintiffs filed this action on May 10, 2007.  In their amended complaint (Filing No. 60), the plaintiffs brought two claims for relief.  First, the plaintiffs alleged DNR and NPPD's actions violated plaintiffs' procedural due process rights under the Fourteenth Amendment to the U.S. Constitution, pursuant to 42 U.S.C. § 1983, and sought an injunction to prevent DNR from issuing or enforcing future closing notices (Amended Complaint ("AC"), Filing No. 60, ¶¶ 156-59).  Second, the plaintiffs sought a declaratory judgment declaring NPPD's appropriation permits were abandoned and DNR's closing notices were issued ultra vires (AC ¶¶ 160-64).

After DNR and NPPD filed motions to dismiss (Filing Nos. 74 & 83), the Court entered an order on August 1, 2007, dismissing the plaintiffs' procedural due process claim (Order, Filing No. 115, at 2).  As this was the plaintiffs' only federal claim, the Court also dismissed without prejudice the plaintiffs' pendant state law ultra vires claim (*Id.* at 4).

The plaintiffs then appealed to the Eighth Circuit, which on April 13, 2009, reversed and remanded the case to this Court for further proceedings.  *Keating*, 562 F.3d at 923, 930.

-13-

In its opinion, the Eighth Circuit provided the following instructions to the Court:

> On remand, the district court must determine if a deprivation of a property right has occurred, . . . and if so, whether that right is subject to an exception to the general rule that a predeprivation process is required.  If the court should find that predeprivation process is required, then it must consider whether the DNR's declaratory order procedures are constitutionally adequate.  After addressing these issues, the district court should proceed, if necessary, with the case.

*Id.* at 930.  The Eighth Circuit also reinstated the state law ultra vires claim.  *Id.*

On remand, the Court stayed the action (Filing No. 129) pending the Nebraska Supreme Court's ruling in the case of *In re 2007 Administration of Appropriations of the Waters of the Niobrara River*, 278 Neb. 137, 768 N.W.2d 420 (2009) [hereinafter *Bond*], a case arising out of the same circumstances as this case but with different farmers and ranchers as plaintiffs.  The *Bond* case raised the issue of the validity of NPPD's appropriation permits, but that issue was not before the Supreme Court.  The Supreme Court ultimately remanded the *Bond* case to DNR on July 17, 2009, for adjudication of the validity of NPPD's appropriation permits.  *Bond*, 278 Neb. at 148, 768 N.W.2d at 428.  The parties have informed the Court that DNR anticipates it will

-14-

hold a hearing on the validity of NPPD's permits on July 27, 2010
(POB ¶ 107).  After the Supreme Court ruled in *Bond*, this Court
ordered (Filing No. 146) the parties to file cross-motions for
summary judgment addressing the issues the Eighth Circuit
identified in its opinion.  After vigorous briefing by the
parties and an informative hearing, the Court is ready to rule on
the plaintiffs' procedural due process claim.

## IV.  SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rule of Civil Procedure
provides "[t]he judgment sought should be rendered if the
pleadings, the discovery and disclosure materials on file, and
any affidavits show that there is no genuine issue as to any
material fact and that the movant is entitled to judgment as a
matter of law."  When a case, such as this one, has unresolved
issues that are chiefly legal rather than factual, summary
judgment is particularly appropriate.  *Noe v. Henderson*, 456 F.3d
868, 869 (8th Cir. 2006) (per curiam).  If the plaintiff cannot
support each essential element of his claim, summary judgment
will be granted because a complete failure of proof regarding an
essential element necessarily renders other facts immaterial.
*Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).

## V.   PROCEDURAL DUE PROCESS CLAIM

The Eighth Circuit instructed the Court to determine
whether the plaintiffs' rights to procedural due process under

-15-

the Fourteenth Amendment were violated.  *Keating*, 562 F.3d at 930.  The Eighth Circuit provided a three-step analysis for the Court to utilize in reviewing the plaintiffs' procedural due process claim.  *Id.*  Initially, the Court must determine whether DNR and NPPD deprived the plaintiffs of a protected property right through the issuance of closing notices.  *Id.*  If DNR and NPPD did not deprive the plaintiffs of a protected property right, no further analysis of the plaintiffs' procedural due process claim is needed, as the plaintiffs would have failed to prove an essential element of their claim.  *See id.*  In resolving this initial issue the Court must address two questions.  First, do the plaintiffs have a property right?  And if so, second, was this property right deprived?

## A.   The Plaintiffs' Property Right

The parties generally agree the plaintiffs hold *some* property rights.  However, the parties do not agree about the scope of these property rights.  For example, the plaintiffs argue they have a "protected property interest in the exercise of their permits and the use of their water" (POB at 20).  Conversely, DNR argues the plaintiffs "can only claim a limited property interest in the *priority* of their appropriation permits, which only bestow the *right to use* surface water *subject to the higher priority of all senior appropriators*."  DNR OB at 23.  Similarly, NPPD argues the plaintiffs' property right "is a

-16-

limited right to *use* the water" and is not a "'claim of entitlement' to water in the Niobrara without regard for the circumstances." NPPD OB at 11, 12. Accordingly, the Court must define the scope of the plaintiffs' property rights under their surface water appropriation permits.

For the purposes of procedural due process, plaintiffs have a property right in disputed property when they have a "legitimate claim of entitlement." *Barnes v. City of Omaha*, 574 F.3d 1003, 1006 (8th Cir. 2009) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Although federal constitutional law determines whether the due process clause protects a property right, property rights are not created by the Constitution. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756-57 (2005); *Habhab v. Hon*, 536 F.3d 963, 968 (8th Cir. 2008). Rather, property rights originate from "state law or some other independent source sufficient to establish mutually explicit understandings of entitlement." *Barnes*, 574 F.3d at 1006 (internal quotations omitted); *see also Gonzales*, 545 U.S. at 756. Thus, the Court looks to Nebraska law and other independent sources to define the plaintiffs' property rights.

As a threshold matter, it is clear the plaintiffs do not hold any right in the waters of the Niobrara River prior to capture. The Nebraska Supreme Court has repeatedly stated the holder of a surface water appropriation permit does not acquire

-17-

ownership of stream water prior to capture, as that water is public property. *See*, *e.g.*, *Spear T Ranch, Inc. v. Knaub*, 269 Neb. 177, 185, 691 N.W.2d 116, 127 (2005) ("A right to appropriate surface water however, is not an ownership of property. Instead, the water is viewed as a public want. . . ."); *Northport*, 215 Neb. at 158, 337 N.W.2d at 738 ("The corpus of running water in a natural stream is not the subject of private ownership. 'Such water is classed with light and the air in the atmosphere. It is publici juris or belongs to the public. . . .'"); *Frenchman Valley Irr. Dist. v. Smith*, 167 Neb. 78, 99, 91 N.W.2d 415, 428 (1958) ("The appropriator of water of a stream does not acquire ownership of such water."). Thus, the Court must reject any contention by the plaintiffs that they have a legitimate claim of entitlement, or property right, in the water flowing through the Niobrara River prior to capture.

Permit holders, however, acquire some property rights under Nebraska law through obtaining surface water appropriation permits. *Loup River*, 142 Neb. at 152-53, 5 N.W.2d at 247-48; *see also Enterprise Irr. Dist. v. Willis*, 135 Neb. 827, 284 N.W. 326, 329 (1939) (collecting cases announcing that a public water appropriator obtains a vested property right). The holder of a surface water appropriation permit acquires a *right to use* surface water within the capacity limits of the stream.

-18-

*Northport*, 215 Neb. at 158, 337 N.W.2d at 738; *Frenchman*, 167 Neb. at 99, 91 N.W.2d at 428.

This right to use, however, is not without limit.  The appropriator "takes this right . . . subject to the rights of all prior and subsequent appropriators, and he cannot infringe upon their rights and privileges." *Farmers' Irr. Dist. v. Frank*, 72 Neb. 136, 100 N.W. 286, 293 (1904); *see Northport*, 215 Neb. at 159, 337 N.W.2d at 738 (stating prior cases have held "that a landowner does not have an exclusive right to use waters to the injury of senior appropriators."); *see also* Harnsberger & Thornson, *supra*, at 113 ("Once priorities are determined by [DNR] they constitute vested rights, and among themselves appropriators have priority according to the dates on their respective appropriations.").  Indeed, the limits of the plaintiffs' property rights are stated in the text of their permits, which provide: "[T]he prior rights of all persons who, by compliance with the laws of the State of Nebraska, have acquired the right to use the waters of the natural streams of the state must not be interfered with by the use of water under this permit."  In essence, by taking their right of use subject to the rights of other appropriators, permit holders hold a right to their place on the priority list.

In addition to the right to use water, permit holders can also acquire preference rights depending on how the permit

-19-

holder uses the water.  Neb. Const. art. XV, § 6; Neb. Rev. Stat. §§ 46-204, 70-668; *Bond*, 278 Neb. at 139, 768 N.W.2d at 423; *see*, *e.g.*, Thompson Affidavit, Exhibit B, at 1 ¶ 12.  In this case, the plaintiffs, who use water for agricultural purposes, hold a superior preference right over NPPD, which uses water for power purposes.  The plaintiffs could uphold their senior preference right if they justly compensated NPPD by way of a subordination agreement or condemnation proceeding.  *Bond*, 278 Neb. at 140, 768 N.W.2d at 423.

The property rights granted to an appropriator by an appropriation permit are also subject to regulation and supervision by the State of Nebraska by virtue of its police power.  *In re Water Appropriation Nos. 442A, 461, 462 & 485*, 210 Neb. 161, 165-66, 313 N.W.2d 271, 274 (1981) (citing Neb. Const. art. XV, §§ 4, 5) ("As we said in *State v. Birdwood Irrigation District*, [154 Neb. 52, 55, 46 N.W.2d 884, 887 (1951)]: The adjudication of the water right gave to [the appropriator] a vested right to the use of the waters appropriated, subject to . . . such reasonable regulations subsequently adopted by virtue of the police power of the state."); *State ex rel. Cary v. Cochran*, 138 Neb. 163, 292 N.W. 239, 246 (1940); *Enterprise*, 135 Neb. at 827, 284 N.W. at 330.  This view comports with the determination of the Idaho Supreme Court, which recently stated in the context of a Fourteenth Amendment procedural due process

-20-

challenge to state regulation of surface waters:  "A water user has no property interest in being free from the State's regulation of water distribution in accordance with the prior appropriation doctrine . . . ."  *In re Idaho Dep't of Water Res. Amended Final Order Creating Water Dist. No. 170*, 220 P.3d 318, 331 (Idaho 2009) [hereinafter *Thompson*].  Thus, when DNR administers surface water, it is regulating through exercising its police power, and appropriators, like the plaintiffs, receive property rights subject to this regulation.

In sum, the plaintiffs have a protected property right to use surface water from a specific source (i.e., the Niobrara River).  In addition, the plaintiffs had a protected property right to exercise their senior preference right if they justly compensate NPPD.  However, the plaintiffs' property rights are limited to the quantity limits of appropriation as specified in their permits, are subject to the rights of other surface water appropriators (i.e., senior appropriators), and are subject to regulation by the state (i.e., administration).

## B.  Deprivation

The next question is whether DNR and NPPD deprived the plaintiffs of their protected property rights.  The answer to this question is clearly no.

First, in a literal sense, the plaintiffs cannot claim a deprivation occurred, as they still retain their appropriation

-21-

permits and DNR has not sought to revoke those permits, has not
sought to change the plaintiffs' place on the priority list, has
not sought to change the amount of water the plaintiffs are
entitled to appropriate under their permits, and has not sought
to strip the plaintiffs of the ability to exercise their senior
preference rights. *See Enterprise*, 135 Neb. 827, 284 N.W. at
330; *see also Thompson*, 220 P.3d at 331 (finding no deprivation
of a water appropriator's property rights in violation of
procedural due process when the state department of water
resources created a new water district, but did not change or
subordinate the appropriator's prior-adjudicated surface water
rights).   Prior to DNR's issuance of the closing notices in favor
of NPPD's permits, the Keatings and the Krejcis each held two
appropriation permits for specific amounts of water and with
certain priority dates. *See* Thompson Affidavit, Exhibits B & C.
After DNR issued the closing notices, the terms of the
plaintiffs' permits did not change and those permits remained in
effect.   In this respect, the plaintiffs cannot claim they were
deprived of property rights.

        In addition, the plaintiffs cannot claim a deprivation
occurred through DNR's administration, or regulation, of the
Niobrara.   The plaintiffs did not have a property right to be
free from DNR's regulation of the prior appropriation system.
Since the plaintiffs' property rights in their permits are

subject to regulation by DNR, DNR's regulation of the plaintiffs'
permits by issuing closing notices cannot act to deprive the
plaintiffs of a protected property right.  This was the view of
the Nebraska Supreme Court in *In re Water Appropriations D-887 &
A-768*, 240 Neb. 337, 482 N.W.2d 11 (1992) [hereinafter *Beerline*].
In *Beerline*, DNR initiated a proceeding against the Beerline
Canal Company ("Beerline") to determine whether to cancel two of
Beerline's surface water appropriation permits.  *Beerline*, 240
Neb. at 338-39, 482 N.W.2d at 13-14.  As part of this proceeding,
DNR determined Beerline was impermissibly irrigating two tracts
of land with water appropriated under one of its appropriation
permits, as these two tracts were not included in the lands
granted irrigation rights under the permit.  *Id.* at 339, 482
N.W.2d at 14.  Beerline appealed this determination, arguing
*inter alia* that DNR's determination violated Beerline's right to
procedural due process under the Fourteenth Amendment.  *Id.* at
343, 482 N.W.2d at 16.  Upon review, the Supreme Court in
*Beerline* decided DNR's determination did not deprive Beerline of
a protected property right.  *Id.* at 344, 482 N.W.2d at 17.
Because Beerline did not have a legitimate claim of entitlement
to irrigate lands not covered by their surface water
appropriation permits, the court determined DNR could not have
deprived Beerline of a protected property right through ordering

-23-

Beerline to cease irrigating those lands.  *Id.* at 344-45, 482
N.W.2d at 17.

Similar to *Beerline*, in which Beerline sought to
exercise rights in excess of those granted by its permit (i.e.,
irrigate lands not covered by the permit), the plaintiffs in this
case seek to exercise rights in excess of those granted by their
permits (i.e., appropriate water notwithstanding NPPD's senior
priority status).  In both cases, DNR acted to regulate
irrigation practices in order to preserve and enforce the prior
appropriation system.  Thus, as in *Beerline*, where the Nebraska
Supreme Court determined that DNR did not deprive Beerline of a
protected property right through ordering Beerline to cease
irrigation of lands not covered by its permit, DNR did not
deprive the plaintiffs in this case of a protected property right
through issuing closing notices ordering the plaintiffs to cease
diverting water in favor of NPPD's senior adjudicated permits.
Stated differently, DNR cannot cause a deprivation of the
protected property right held by appropriation permit holders
when it regulates the appropriation of surface water in order to
preserve and enforce the prior appropriation system.[7]

---

[7] The Court realizes that DNR's regulating acts could
constitute a deprivation of a protected property right if the
regulating act strips a permit holder of a right secured by its
permit (e.g., amount of appropriation, place on the priority
list, or cancelling of a permit).  Short of this type of action,
DNR does not deprive a permit holder of a protected property
right through regulation.

-24-

Because DNR did not deprive the plaintiffs of a protected property right through the issuance of closing notices, procedural due process is not implicated.  The plaintiffs have failed to establish an essential element of their procedural due process claim, *Celotex Corp.*, 477 U.S. at 322-23, and no further analysis of the plaintiffs' claim is required.  *See Keating*, 562 F.3d at 930.  Accordingly, the Court will grant summary judgment in favor of DNR and NPPD on the plaintiffs' federal claim.

## C.   State Ultra Vires Claim

The United States Supreme Court has stated that "certainly if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibb,* 383 U.S. 715, 726 (1996).  Dismissal of the state claims is not mandatory but is left to the district court's discretion. *Murray v. Wal-Mart, Inc.*, 874 F.2d 555, 558 (8th Cir. 1989). Nothing in this case indicates that the Court should retain jurisdiction over the plaintiffs' state law ultra vires claim. There has not been a substantial investment of judicial time or resources on the ultra vires issue warranting federal jurisdiction.  With the plaintiffs' procedural due process claim resolved, this action will be dismissed without prejudice as to the plaintiffs' state law ultra vires claim.

**IV.   CONCLUSION**

The Court will grant summary judgment in favor of DNR and NPPD on the plaintiffs' procedural due process claim.  The Court will also dismiss without prejudice the plaintiffs' state law ultra vires claim.  A separate order will be entered in accordance with this memorandum opinion.

DATED this 12th day of May, 2010.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court